Randy Sullivan (229326)
Randy@pattonsullivan.com
**PATTON & SULLIVAN LLP**
6600 Koll Center Parkway, Suite 250
Pleasanton, California 94566-8058
925-600-1800 Phone
925-600-1802 Fax

Attorneys for Plaintiffs
Ryan Cox and Blane Cox

**E-Filing**

**FILED**

SEP 2 5 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

RYAN COX, and BLANE COX

    Plaintiffs,

    v.

THE COUNTY OF ALAMEDA, a
municipal corporation; the CITY OF
DUBLIN, a municipal corporation;
DEPUTY MARC G. DINIS; and  DOES
1-10

    Defendant.

Case: C13- 4449  KAW

**COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

Plaintiffs Ryan Cox and Blane Cox allege as follows:

## NATURE OF THE ACTION

1.    This case arises from the Alameda County Sheriff's Office's improper intervention in a family mental health crisis. Ryan Cox was treated like a violent felon in the midst of committing a dangerous crime, instead of an individual suffering from a mental health crisis as a result of his illness.  On the day of

---

COMPLAINT

1

1   January 25, 2013 Ryan Cox's father, Blane Cox called the police department

2   because his son needed treatment.   This was not an emergency.  Blane Cox did not

3   call 911, and when he called the police department he informed them that he was

4   calling because of a mental health episode with his son. Upon arriving at the Cox

5   residence, the Alameda County Sheriff's Office escalated a situation knowing they

6   were called to address a mental health episode.  Less than two minutes after

7   arriving at the Cox residence and without provocation, the Alameda County

8   Sheriff's Office repeatedly shot Ryan Cox.  The Police Officer fired several

9   rounds.  Ultimately the Police Officer shot Ryan Cox once in the groin and upper

10  thigh, twice in his lower left stomach (one bullet exited his rear), once in his left

11  chest, and once in his elbow fracturing the radius and ulna bone. Each time Ryan

12  Cox was shot he was not making any movement or threat toward anyone.  Because

13  hallow point bullets were used, these bullets expanded in Ryan Cox's body, and

14  caused severe physical damage, tissue damage, and pain and suffering.

15      2.      Recognizing that they committed an unlawful shooting, the Alameda

16  County Sheriff's Office then attempted to cover up the unjustifiable shooting, and

17  misrepresented the nature of the incident.  The Alameda County Sheriff's Office

18  was intent on creating its own version of the incident.  Specifically, the Alameda

19  County Sheriff's Office falsely stated without any reasonable basis that Plaintiff

20  Ryan Cox immediately confronted Deputy Dinis, and that Plaintiff Ryan Cox

21  immediately charged Deputy Dinis with a 12 inch Rambo style knife.

22      3.      The truth, as reflected by an independent, innocent bystander, is that

23  Ryan Cox had a small 3-4 inch knife in hand held to his side, was at least 15-20

24  feet away from the deputy that shot Ryan Cox, and he was standing still and not

25  charging or even briskly walking towards anyone at the time he was shot.  Ryan

26  Cox did not pose an imminent or serious threat to anyone – hence, the attempted

27  cover up.  There was no reasonable basis for the repeated use of deadly force.  The

28

2

1  firing of these shots caused significant damage to Ryan Cox, and put nearby police
2  officers and the public at risk.

3                                   **PARTIES**

4       4.    Plaintiff Ryan Cox is a citizen of the United States and resident of the
5  State of California.

6       5.    Plaintiff Blane Cox is a citizen of the United States and resident of the
7  State of California.

8       6.    Defendant the County of Alameda is a municipal corporation and
9  government entity within the meaning of California Government Code sections
10 811.2 and 900 *et seq.*  Plaintiffs allege on information and belief that at all relevant
11 times the Alameda County Sheriff's Office, which employs Defendant Deputy
12 Dinis, and DOES 1-10, was a department and/or division of the County of
13 Alameda.

14      7.    Defendant the City of Dublin resides and operates in the City, and is
15 responsible with providing the residents of Dublin with properly trained police
16 services to ensure their safety and well being.  At all relevant times, the City of
17 Dublin was the employer of the Defendant the Dublin Police Services, which is an
18 agency and department operated by the City of Dublin.  Moreover, Plaintiffs allege
19 on information and belief that the City of Dublin is the employer of the Alameda
20 County Sheriff's Office by way of a contractual arrangement directly with the
21 Sheriff's office, and/or the County of Alameda.

22      8.    Plaintiffs allege on information and belief that the City of Dublin was
23 responsible for the hiring, supervision, policymaking, and training of the Alameda
24 County Sheriff's Office's Officers, the Dublin Police Department and deputies that
25 were to patrol the City of Dublin, including but not limited to, Deputy Dinis, and
26 DOES 1-10.

27      9.    Plaintiffs allege on information and belief that Defendant Deputy
28 Dinis is an Alameda County Sheriff Deputy, and he was hired and approved by the

                                                                                    3
COMPLAINT

City of Dublin. Deputy Dinis is sued individually and in his official capacity as officer of Alameda County Sheriff's Office, and Dublin Police Services, and agent for the County of Alameda and City of Dublin.

10.   Plaintiffs are ignorant of the true names and capacities of Defendants Does 1 through 10, and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries, damages and deprivation of constitutional rights suffered by Plaintiffs as described in this complaint. Plaintiffs will amend their complaint to state the true names, capacities and basis for liability of Defendants Does 1 through 10 when they have been ascertained. Any reference in this complaint to Defendant, Defendants, or to an individually named Defendant also refers to Defendants Does 1through 10.

11.   The acts and omissions of all Defendants alleged herein were committed pursuant to the actual custom, policies, practices, and procedures of the City of Dublin's Police Department and the Alameda County Sheriff's Office. Moreover, each Defendant acted under the color of the laws, statutes and regulations of the State of California. Finally, each Defendant named in this complaint acted as the agent or employee of every other Defendant.

## JURISDICTION AND VENUE

12.   This Complaint seeks damages pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of Plaintiffs' civil rights and related claims.

13.   Jurisdiction is founded on 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C.A. § 1367.

14.   Plaintiffs allege on information and belief that venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, the County of Alameda, California.

4

COMPLAINT

15.    Plaintiffs allege on information and belief that at the time of the subject incident, the Defendants were acting under color of state law.

## FACTUAL ALLEGATIONS

**A.    STANDARD POLICE TRAINING REQUIRES THE POLICE TO DE-ESCALATE SITUATIONS WHEN INTERACTING WITH PERSONS WITH A MENTAL ILLNESS.**

16.    Police officers across the country and in the San Francisco Bay Area encounter mentally ill persons daily, and for many, police officer interactions with the mentally ill are considered an everyday part of the job.  It is estimated that more than 45 million U.S. adults have some type of mental illness.  (National Survey on Drug Use and Health (NSDUH) Report, US Substance Abuse and Mental Health Services Admin. (Oct. 5 2011)).  One in 17 Americans lives with a serious mental illness such as schizophrenia, major depression or bipolar disorder. ("Prevalence of Serious Mental Illness Among US Adults," National Institute of Mental Health (2008)).

17.    National guidelines have been developed to ensure the safety of both officers and citizens in addressing persons with mental health distress, including but not limited to Police Officer Training and Standards ("POST").  These guidelines have been in place for several years, are widely accepted and implemented, and are essential to the proper functioning of any professional police department.  The guidelines clearly mandate that the first principle of contacting a mentally ill person is to calm the situation.  An officer should move slowly by assuming a quiet and non-threatening manner when approaching the individual, and if possible, avoid physical contact if no violence or destructive acts have taken place.  The fundamental goal of police interaction with the mentally ill is to diffuse the situation and safely facilitate medical care, or crisis intervention.  Proper training in accordance with these guidelines protects the safety of the public,

COMPLAINT

5

1  minimizes the risk of harm to the responsible officers, and ensures that the

2  disturbed individual is managed in a humane manner.

3     18.    Plaintiffs further allege on information and belief that funds were

4  available for further training of the Alameda County Sheriff's Office and the

5  Dublin Police Department, but had not, and still may not have been used for crisis

6  intervention training.

7     19.    Plaintiffs allege on information and belief that these funds were not

8  properly utilized even though, prior to the subject incident, the City of Dublin was

9  aware of the necessary training needed of its officers.

10       a. Less than a year before Ryan Cox was wrongfully riddled with

11          bullets, the Dublin Police Department shot and killed Daryl

12          Podborny, who had been disturbed while sleeping, and was known

13          in the community as a non-threatening person.

14       b. Plaintiff alleges on information and belief that there had been other

15          shootings, including but not limited to, a 2005 shooting of a

16          Kwang Tae Lee.

17       c. In fact, Plaintiff alleges on information and belief that, months

18          before on or about October 12, 2011, Deputy Dinis, the officer

19          who shot Ryan Cox, had used unlawful force, including but not

20          limited to, *McClellan v. County of Alameda, Deputy Dinis, et al.*

21          United States District Court, California Northern District, Case

22          Number 3:12-cv-05795-MMC.

23  **B.    PRIOR TO THE SUBJECT INCIDENT THE DEFENDANTS HAD PROPERLY**

24     **INTERVENED AND DE-ESCALATED SITUATIONS WHERE RYAN COX**

25     **WAS SUFFERING MENTAL DISTRESS.**

26     20.    The Dublin Police Department had been called to the Cox residence in

27  the past.  Violence had not been necessary on prior occasions.  Months before the

28  subject incident, they had been called to attend to a family mental health distress

6

COMPLAINT

1  issue and Ryan Cox had a knife in his possession. Unlike the subject incident, on

2  that occasion the Dublin Police Department spent time to de-escalate the situation,

3  and Ryan Cox dropped the knife.

4      21.    In summary, Plaintiffs allege on information and belief, that the Police

5  had not only tended to Ryan Cox when he previously had been suffering from

6  mental health distress, but they also understood, or at least should have known, that

7  if they followed proper protocols he could be managed and would not cause any

8  harm to anyone.

9      **C.**    **THE SUBJECT INCIDENT.**

10      22.    At the time of the incident, on or about January 25, 2013, Plaintiff

11  Ryan Cox was in a state of mental health distress. As discussed above, the

12  Alameda County Sheriff's Office and Dublin Police Services were fully aware of

13  Plaintiff Ryan Cox's mental health condition, and had engaged in a number of non-

14  violent situations with him in the past. Hereinafter, collectively the Alameda

15  County Sheriff's Office and Dublin Police Services will be referred to as the

16  Police.

17      23.    Despite the standard and widely accepted guidelines for intervening or

18  encountering family mental health crisis situations, the Police did the exact

19  opposite in addressing the Cox family's mental health crisis. The Police escalated

20  the situation. As explained below, the Police attempted to detain Ryan Cox

21  without announcing anything to him, and pulled their firearms, and ultimately shot

22  multiple rounds from a firearm, hitting Ryan Cox at least 5 times, and placing his

23  life in jeopardy, and the lives of those around Ryan Cox, including other police

24  officers and members of the public. Ryan Cox was not acting violent or

25  destructive.

26      24.    Specifically, in the morning of January 25, 2013, Blane Cox called the

27  Dublin Police Department and advised the department that he needed to have

28  police officers on standby because his son Ryan Cox who has a mental illness

7

COMPLAINT

Case4:13-cv-04449-KAW Document1 Filed09/25/13 Page8 of 20

refused to take his medication, and he wanted him to leave. Blane Cox also informed the department that on prior occasions his son had been treated and placed in an involuntary psychiatric detention. Blane Cox has utilized this procedure of calling the Dublin Police Department in the past without issue. On prior occasions, the Police immediately deescalated the situation. If there had been an emergency, Blane Cox would have called 911 instead of the Dublin Police Department. There was no emergency.

25. In response to the mental health distress call, at or about 9:27 a.m. Deputy Dinis arrived on a motorcycle at the Cox Residence located at 7528 Frederickson Lane, Dublin, California. Blane Cox was outside his residence and at the curb when Deputy Dinis arrived. Blane Cox and Deputy Dinis were standing curbside next to the driveway to the Cox residence.

26. In the driveway of the Cox residence was parked a 2004 Ford Explorer, and the garage door was open. Blane Cox and Deputy Dinis were located to the northwest of the Ford Explorer.

27. Blane Cox then advised Deputy Dinis about his son's mental health history, and again explained that his son had not been taking his medication, and had been placed in an involuntary psychiatric detention in the past.

28. At or near the same time Deputies Castellucio and Armosino arrived at the Cox residence in separate patrol cars. Deputies Castellucio and Armosino then began approaching the garage from the east of the Ford Explorer, near the front door of the Cox residence and the garage. They were walking away from the street curb, and towards the Cox residence/garage.

29. At that time Ryan Cox came out of the garage. He was wearing pajama pants and a t-shirt, and he was walking toward his father and Deputy Dinis. Just then Castellucio and Armosino snuck up behind Ryan Cox to try and detain Ryan Cox by putting him in handcuffs, but Ryan Cox was startled and then

8

COMPLAINT

1    naturally spun away.  At no point in time had it been announced in any manner that

2    Ryan Cox was being placed under arrest.

3          30.      Next, the Police asked Ryan Cox if he was armed, and he then pulled

4    his shirt up to show a small knife, and he pulled the knife out, and held it to his

5    side.  At no time did Ryan Cox ever hold the knife in an ice pick position or any

6    other threatening or deadly manner.

7          31.      Immediately three guns were aimed at Ryan Cox.  All three Police

8    officers pulled their firearms and aimed them at Ryan Cox.  At this moment,

9    Deputies Castellucio and Armosino were within 5 feet of Ryan Cox.  Deputy

10    Dinis, however, was approximately 15-20 feet away.  Plaintiffs allege on

11    information and belief that at least one, if not all three of the Police had a Taser in

12    their possession that could have been used *if* a reasonable threat were presented.

13          32.      Just then and no later than approximately 9:29 a.m., Deputy Dinis,

14    who was the police officer farthest away fired several rounds from his firearm.

15    These gunshots were fired wantonly, recklessly, without justification, willfully,

16    maliciously and intentionally, thereby committing a battery on Plaintiff and

17    inflicting serious injuries. Five of the gunshots hit Ryan Cox: one to the groin and

18    upper thigh; two shots to his lower left stomach (one bullet exited his rear); one to

19    the left chest; and one to the elbow.

20          33.      At the time of the unlawful shooting, Ryan Cox was not rapidly

21    advancing towards any of the Police, and he was not a threat to anyone.

22          34.      Each gunshot was fired while Ryan Cox's father was standing directly

23    next to Deputy Dinis.  The firearm was held within 2 feet from Blane Cox's head,

24    while Deputy Dinis shot his son.

25          35.      Plaintiffs allege on information and belief that immediately after the

26    unlawful shooting, the Police began a cover up, and misrepresented the

27    circumstances surrounding the shooting even though they knew independently and

28

9

COMPLAINT

1   from witnesses that Plaintiff had not been a threat to anyone, before or at the time

2   he was shot 5 times.

3       36.     Plaintiffs timely filed a government claim on June 26, 2013, and

4   amended the government claim on July 25, 2013.  More than 45 days have elapsed

5   since the claim was presented to Defendants, and no action was taken on said

6   claim. As a result, the claim has been deemed denied pursuant to Government

7   Code Section 911.6(c) and § 912.4(c).

8       37.     Plaintiffs allege on information and belief that Defendants the County

9   of Alameda, the City of Dublin, and  DOES 1-10 , failed to adequately train

10  officers in defensive tactics, proper use of force, and handling subjects in need of

11  mental health assistance and/or with diminished mental capacity; and failed to

12  supervise, investigate, or reprimand police officers of the Alameda County

13  Sheriff's Office and the City of Dublin for the violation of a suspect's

14  constitutional and personal rights. Plaintiffs are informed and believe, and on that

15  basis allege that Defendants County of Alameda and the City of Dublin and DOES

16  1 through 10, had actual and/or constructive knowledge that the failure to

17  adequately train, supervise, and discipline police officers would cause violations of

18  personal and constitutional rights, and the likelihood that police officers who

19  worked in the Santa Rita jail would not be acclimated for serving the general

20  public, and would be more prone to violence, and less likely to de-escalate any

21  given situation, including those with persons with mental illness. The inadequate

22  supervision, training, and discipline of the police officers regarding defensive

23  tactics, the proper use of force, and handling subjects in need of mental health

24  assistance and/or persons with diminished mental capacity, demonstrates the

25  existence of a *de facto* custom or policy that tolerates and promotes the misconduct

26  and violations of constitutional and personal rights, including the misconduct

27  described in this complaint.

28

COMPLAINT

38.     Plaintiffs allege on information and belief, that the Defendants the County of Alameda and City of Dublin, and DOES 1 through 10 had a policy of failing to engage mental health workers and police responses to crisis situations concerning individuals in need of mental health assistance and with diminished mental capacity, at least when weapons possibly were involved.

**D.      DAMAGES**

39.     As a direct, legal and proximate result of the acts and omissions alleged herein, Ryan Cox suffered physical pain and emotional distress in violation of his constitutional rights.

40.     As a direct, legal and proximate result of the acts and omissions alleged herein, Plaintiff Blane Cox has suffered emotional distress associated with witnessing the repeated shooting of his son by the Defendants.

41.     As a direct, legal and proximate result of the acts and omissions alleged herein, Plaintiffs seek all damages and remedies allowable pursuant to 42 U.S.C. §§1983 and 1988, the decisional authority of federal civil rights law, and California state law.

42.     The Police actions described in this complaint were taken with reckless and callous disregard for the rights of the Plaintiff, Ryan Cox, with willful oppression and malice, thereby supporting an award of punitive damages.

43.     Plaintiffs have engaged counsel to vindicate their rights, and therefore are entitled to recover all attorney fees incurred in connection with this action pursuant to 42 U.S.C. § 1988, and relevant state law provisions.

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Violation of Plaintiff Blane Cox's Rights**

**(Against Defendant Deputy Dinis in his Personal Capacity)**

44.     Plaintiff Ryan Cox hereby incorporates the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

COMPLAINT

45.    While acting under the color of law, Defendant's conduct deprived Plaintiff Ryan Cox of his rights under the United States Constitution. Defendant violated the constitutional rights of Ryan Cox to be free from the use of excessive force, and to be free from unreasonable seizures under the Fifth and Fourteenth Amendments. Defendant deprived Plaintiff of liberty without due process of the law in violation of the Fifth and Fourteenth Amendments.

46.    Defendant's seizure of Plaintiff was unreasonable, unnecessary, and unwarranted. Defendant's shooting of Plaintiff was without legal justification or provocation and constituted an unreasonable, excessive use of deadly force.

47.    Defendant's conduct caused serious bodily and mental injuries to Plaintiff. As a result of Defendant's conduct, Plaintiff has suffered significant physical harm, severe emotional distress, pain and suffering, and the loss of liberty, and loss of the life he once enjoyed. These injuries are compensable pursuant to U.S.C. §1983.

48.    The Defendant's acts and omissions were done willfully, maliciously, and oppressively, with reckless or deliberate indifference or conscious disregard of Plaintiff's constitutional rights, thereby warranting an award of exemplary or punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Monell Liability

### (Against Alameda County and the City of Dublin)

49.    Plaintiff Ryan Cox hereby incorporates the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

50.    The policies, practices, acts and omissions of Defendants the City of Dublin and the County of Alameda, and Does 1 through 10, and their deliberate indifference and adoption and ratification of the misconduct of Officer Dinis as

COMPLAINT

12

1 | alleged herein, were moving and causative forces behind the violations of
2 | constitutional rights and the resulting damages suffered by Plaintiff.

3 |   51.   The Alameda County Sheriff's Office and the Dublin Police
4 | Department's policies of allowing its officers to use excessive and lethal force, and
5 | of not engaging mental health workers when responding to crisis situations
6 | constitute the deliberate indifference to Plaintiff's constitutional rights, and were
7 | moving and causative forces behind the violations of constitutional rights and the
8 | resulting damages suffered by Plaintiff.

9 |   52.   Plaintiff alleges on information and belief that the misuse of lethal and
10 | excessive force described here also stemmed from a deliberate failure of the City to
11 | properly train its officers and/or command staff, and the City's deliberate
12 | indifference to these training needs.  The City knew or should have known that its
13 | officers would come into contact with individuals in mental health crisis or with
14 | otherwise diminished mental capacity, and that such situations require special
15 | training and tactics to be resolved safely with police intervention.  The need for
16 | training to enable officers to avoid mishandling this type of situation has been
17 | patently obvious to the City prior to this shooting, due to the prior incidents and the
18 | nationally recognized challenge these situations regularly pose to public safety
19 | officials.  When public safety officials deal with individuals in mental health
20 | crises, they require specialized education and training.  In the absence of such
21 | training, there is no way for officers to obtain the knowledge they require.

22 |   53.   The lack of training and deliberate indifference is also reflected by
23 | this single encounter where Plaintiff had a history of obeying the requests of police
24 | officers, and previously possessed a knife but put it down.  With proper training,
25 | each of the officers would have been operating from a common understanding of
26 | the best practice for this type of situation, so as to avoid confrontation and not
27 | escalate the situation.

28 |

13

COMPLAINT

54.     As explained above, comparatively, there have been sufficient prior incidents for the City of Dublin and County of Alameda to take action.  The failure to provide appropriate training regarding excessive force, and dealing with individuals in mental health crisis or with diminished mental capacity, exhibits a deliberate indifference to the training needs of its officers and the constitutional rights of its citizens.

55.     Plaintiff further alleges on information and belief that the City of Dublin and the County of Alameda created an atmosphere that would lead to unnecessary police violence by hiring and assigning police officers and deputies who had spent comparatively considerable time policing the Santa Rita jail, and not policing members of the public.  The Defendants knew or should have known that such police officers or deputies that had served in the Santa Rita jail were prone to overact through violence, and less likely to not resort to force, and less likely to de-escalate situations involving the mentally ill. In addition, Plaintiff alleges on information and belief that Defendants failed to supervise or discipline police officers with a history of misconduct, which created an atmosphere of tolerance for police violence.

56.     Plaintiff alleges on information and belief that additionally the officer's use of excessive and lethal force against Plaintiff without justification was ratified by the City of Dublin and County of Alameda through their wrongful exoneration of the officer's misconduct, and misrepresentation of the circumstances of the incident to the public.  If the Defendants had properly investigated the matter Deputy Dinis would have faced disciplinary action, which Plaintiff alleges on information and belief did not occur.  Plaintiff alleges on information and belief that the alleged exoneration of Deputy Dinis was designed to protect the officers and the Defendants, and not to correct the situation or bring the truth to light so that tragedies can be avoided in the future.

WHEREFORE, Plaintiff prays for relief as set forth below.

14

COMPLAINT

## THIRD CLAIM FOR RELIEF

### Negligence

### (Against all Defendants)

57.     Plaintiff Ryan Cox hereby incorporates the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

58.     On or about January 25, 2013, Defendants, and each of them, were negligent by virtue of their acts and omissions alleged in this complaint. At all times, Defendants owed Plaintiffs a duty to act with due care to avoid unnecessary or unjustified harm. Police officers, including the individual Defendant herein, are charged with the duty of serving the public in a manner that protects the safety and lives of its citizens, and in a manner that defuses rather than escalates potentially violent situations.

59.     The City of Dublin and the County of Alameda also had a duty to hire, train, and supervise its employees so as not to cause harm to Plaintiff and to prevent the violation of constitutional and other legal rights. As discussed above, such policies, procedures, and training guidelines are well developed and prevalent among professionally run Police Departments across the country.

60.     Defendants recklessly, carelessly, and negligently breached their duty and caused Plaintiff's injuries. Deputy Dinis used excessive and lethal force in response to behavior by Plaintiff that was not threatening, and was without risk of injury to himself or anyone else.

61.     The City of Dublin and the County of Alameda also breached their duty to use reasonable care in the hiring, supervision, training, and/or retention of members of the Police Department, including the Defendant and Deputy Dinis, to avoid foreseeable injury and damages to members of the public, including Plaintiff.

62.     The wrongful acts described herein were foreseeable and were the legal and proximate result of Defendants' negligence in failing to exercise reasonable care to prevent injuries and potentially death to innocent citizens.

COMPLAINT

63.    As an actual and proximate result of Defendants' wrongful conduct Plaintiff has sustained substantial damages.

64.    The acts and/or omission of the individuals Defendants as alleged herein occurred in the course and scope of their employment with the City of Dublin and the County of Alameda, and these Defendants are liable for their employees' acts and/or omissions pursuant to California Government Code § 815.2 under the doctrine of *respondent superior*.

65.    As a direct and legal consequence of the negligence of Defendants, plaintiff sustained damages set forth herein.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CLAIM FOR RELIEF

### Battery

### (Against all Defendants)

66.    Plaintiff Ryan Cox hereby incorporates the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

67.    Defendants intended to cause and did cause harmful contact to Plaintiff with the intent to harm or offend Plaintiff while acting in the course and scope of their employment as officers for the County of Alameda, and City of Dublin.

68.    Plaintiff did not consent to the contact and was, in fact, harmed as a result of Defendants' contact, as any reasonable person would be harmed by such excessive force. Plaintiff suffered damages, including but not limited to, broken bones, torn muscles, holes in his body, lacerations, pain and suffering, and severe emotional distress.

69.    In doing the things herein alleged, Defendants acted maliciously, fraudulently and oppressively, thereby warranting recovery of punitive damages or exemplary damages from Defendants in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

16

COMPLAINT

# FIFTH CLAIM FOR RELIEF

## Assault

### (Against all Defendants)

70.     Plaintiff Ryan Cox hereby incorporates the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

71.     Defendants acted intending to cause harmful contact within the course and scope of their employment as police officers with the Defendant the City of Dublin, and the County of Alameda.

72.     Plaintiff did not consent to Defendants' acts.

73.     As a direct and proximate result of Defendants' conduct, Plaintiff not only feared for his safety but suffered apprehension of immediate harmful contact. Defendants' conduct was a substantial factor in causing Plaintiff's damages.

74.     In doing the things herein alleged, Defendants acted maliciously, fraudulently and oppressively, thereby warranting recovery of punitive damages or exemplary damages from Defendants in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

# SIXTH CLAIM FOR RELIEF

## Violation of the Bane Act, California Civil Code § 52.1

### (Against all Defendants)

75.     Plaintiff Ryan Cox hereby incorporates the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

76.     Defendants intentionally interfered with Plaintiff's civil rights by threatening and intimidating Plaintiff and further by committing the violent acts previously described.

77.     Defendants injured Plaintiff to prevent Plaintiff from exercising his right to be free from unreasonable seizures.  Plaintiff was harmed as a result of Defendants' conduct and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

COMPLAINT

78. In doing the things herein alleged, Defendants acted maliciously, fraudulently and oppressively, thereby warranting recovery of punitive damages or exemplary damages from Defendants in an amount prove at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SEVENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (Against all Defendants)

79. Plaintiffs Ryan Cox and Blane Cox hereby incorporate the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

80. The conduct alleged herein was extreme and outrageous, and an abuse of authority and position. The conduct was intended to cause Ryan Cox severe emotional distress and was done with a conscious disregard of the probability of causing Ryan Cox severe emotional distress. Moreover, the conduct was done in reckless disregard of the probability of causing Blane Cox emotional distress, because Deputy Dinis knew he was present. Defendant Dinis repeatedly fired his gun within 2 feet of Blane Cox's head, forcing him to witness the repeated and unprovoked shooting of his son, Ryan Cox.

81. As the proximate result of Defendants' acts, as alleged above, Plaintiffs have suffered humiliation, embarrassment, mental and emotional distress and anguish, emotional pain and suffering, and physical distress, and have been injured in mind and body, including, without limitation, suffering, distress, fear, stress, dread, and anxiety.

82. As a further proximate result of Defendants' conduct, Plaintiffs suffered severe emotional distress.

83. Defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

COMPLAINT

18

**EIGHTH CLAIM FOR RELIEF**

**Negligent Inflection of Emotional Distress**

**(Against all Defendants)**

84.     Plaintiffs Ryan Cox and Blane Cox hereby incorporate the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

85.     The conduct alleged herein was extreme and outrageous, and an abuse of authority and position. The conduct was intended and/or negligently done to cause Ryan Cox severe emotional distress and was done with a conscious disregard of the probability of causing, Ryan Cox severe emotional distress.

86.     Moreover, the conduct was done in reckless disregard of the probability of causing Blane Cox emotional distress.  Defendant Dinis repeatedly fired his gun within 2 feet of Blane Cox's head, forcing him to witness the repeated and unprovoked shooting of his son, Ryan Cox.

87.     As the proximate result of Defendants' acts, as alleged above, Plaintiffs have suffered humiliation, embarrassment, mental and emotional distress and anguish, emotional pain and suffering, and physical distress, and have been injured in mind and body, including, without limitation, suffering, distress, fear, stress, dread, and anxiety.

88.     As a further proximate result of Defendants' conduct, Plaintiffs suffered severe emotional distress.

89.     Defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

1.     For general damages against all Defendants, jointly and severally, in an amount to be proven at trial;

2.     For special damages against all Defendants, jointly and severally, in an amount to be proven at trial;

19

COMPLAINT

3.   For punitive and exemplary damages against the individual Defendants and Does 1-10, jointly and severally, in an amount to be proven at trial;

4.   For reasonable attorneys fees under 42 U.S.C. § 1988 and California Civil Code 52.1(h);

5.   For costs of suit incurred herein; and,

6.   For such other and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL AND SPEEDY HEARING**

Pursuant to Federal Rules of Civil Procedure, Rules 38 and 39, Plaintiffs demand a jury trial.

Dated: September 25, 2013

PATTON & SULLIVAN LLP

By: _____
    Randy Sullivan
    Attorneys for Plaintiffs

20

COMPLAINT